CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 01 2015

JULIA C. DUDLEY, CLERK
BY: /s/ 
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNIVERSITY OF VIRGINIA PATENT FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> DYNAVOX SYSTEMS, LLC. <br><br> Defendant. | Civil Action No. 3:15CV00015 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

Plaintiff University of Virginia Patent Foundation ("UVAPF") filed this breach of contract action against defendant DynaVox Systems, LLC ("DynaVox"). This matter is currently before the court on defendant's motion to dismiss, or in the alternative, motion to stay proceedings in favor of arbitration. For the reasons set forth below, the court shall grant defendant's motion and stay the action in favor of arbitration.

## Background

UVAPF is a non-profit Virginia corporation with its principal place of business in Charlottesville, Virginia. DynaVox is a Delaware limited liability company with its principal place of business in Pittsburgh, Pennsylvania. On June 1, 2000, UVAPF entered into a licensing agreement (the "Licensing Agreement") with ERICA, Inc. ("ERICA"), DynaVox's predecessor. In the Licensing Agreement, UVAPF granted ERICA an "exclusive, worldwide license in the Field under the Licensed Know-how and the Licensed Patents to make, have made, use, import, offer to sell, sell, lease or otherwise transfer the beneficial use of Licensed Products." Compl. Ex. 1, at 4. "Licensed Products" were defined as "any product ... which (i) is covered by, or is made or used by a process covered by, one or more pending or issued claim in one or more of the

Licensed Patents." Id. at 3. "Licensed Patents," as defined in the Licensing Agreement, include U.S. Patent Application Serial No. 09/027, 511, which matured into U.S. Patent No. 6,152,563 (the "'563 Patent"). The '563 Patent is entitled "Eye Gaze Direction Tracker" and contains twelve claims, three of which are independent claims. As consideration for the license, ERICA agreed to pay, inter alia, a running royalty based on its sales of Licensed Products. From 2005 through 2009, ERICA paid annual royalties and submitted royalty reports to UVAPF.

On January 4, 2010, DynaVox acquired all outstanding shares of ERICA. Thereafter, DynaVox introduced its "EyeMax" line of eye-tracking technologies. The line contains two components: (1) a "Vmax" display, resembling a computer screen or tablet, and (2) an "EyeMax accessory," containing eye-tracking equipment. The EyeMax accessory allows users to control the Vmax with a blink or by causing the eye to remain on a section of the screen. UVAPF alleges that DynaVox's EyeMax technologies, and related products, are Licensed Products under the Licensing Agreement because they are covered by the '563 Patent. UVAPF asserts that the packaging for DynaVox's EyeMax technologies line even states that the product is covered by the '563 Patent. Therefore, UVAPF argues that DynaVox is in breach of contract of the Licensing Agreement for failing to pay royalties on its sales of Licensed Products.

The Licensing Agreement also contains an arbitration clause that provides that:

> Claims, disputes, or controversies concerning the validity, construction, or scope of any of the Licensed Patents shall be resolved in the Federal District Court residing in Charlottesville, Virginia. All other claims, disputes or controversies arising under, out of, or in connection with this Agreement, which have not been resolved by good faith negotiations between the parties, shall be resolved by final and binding arbitration in Charlottesville, Virginia, under the rules of the American Arbitration Association.

Compl. ¶ 6. On June 10, 2014, UVAPF initiated arbitration against DynaVox, pursuant to this arbitration clause, in order to collect its unpaid royalties. During the arbitration proceedings,

2

DynaVox denied that it made, used, or sold any products subject to the Licensing Agreement on the grounds that none of its products were covered by the Licensed Patents, including the '563 Patent. In light of DynaVox's response, which UVAPF contends put the scope of a Licensed Patent at issue, UVAPF withdrew its claim for unpaid royalties from arbitration and filed its complaint in this court on March 27, 2015. UVAPF seeks damages for non-payment of royalties and a permanent injunction against DynaVox to prevent further sales of Licensed Products without royalty payments. On May 20, 2015, DynaVox filed a motion to dismiss or, in the alternative, to stay proceedings in favor of arbitration. This motion has been fully briefed and was argued on September 4, 2015. It is now ripe for review.

## Discussion

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration agreements." Green v. Zachry Indus., Inc., 36 F. Supp. 3d 669, 672 (W.D. Va. 2014) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). In the Fourth Circuit, a litigant can compel arbitration under the FAA by showing four prerequisites: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). Only the second factor is in dispute in this case. Under this prerequisite, there are two considerations: (1) whether there is a valid and enforceable arbitration agreement, and (2) whether the claims asserted in the suit are within the scope of that agreement. A&G Coal Corp. v. Integrity Coal Sales, 600 F. Supp. 2d 709, 713 (W.D. Va. 2009); see also Green, 36 F. Supp. 3d at 673-78.

3

The FAA does not expressly identify the evidentiary standard a party seeking to avoid arbitration must meet, but this court has analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure. S. Elec. Servs., Inc. v. Cornerstone Det. Prods., Inc., No. 7:10CV00076, 2010 WL 2233664, at *3 (W.D. Va. June 3, 2010). As such, a party cannot avoid arbitration by "generally denying the facts upon which the right to arbitration rests" but must instead "identify specific evidence demonstrating a material factual dispute." Id.

## I.     Existence of a Valid, Enforceable Arbitration Agreement

In order to compel arbitration, the court must first determine that there is a valid, enforceable arbitration agreement between the parties. In the Fourth Circuit, it is "well established that the obligation to arbitrate is a creature of contract and that a party cannot be required to submit to arbitration unless he has agreed to do so in a contract." Marrowbone Dev. Co. v. Dist. 17, United Mine Workers of America, 147 F.3d 296, 300 (4th Cir. 1998). "Courts apply ordinary state-law principles governing contract formation to determine whether the parties entered into a valid, enforceable agreement to arbitrate under the FAA." McNeil v. Haley S., Inc., No. 3:10CV192, 2010 WL 3670547, at *3 (E.D. Va. Sept. 13, 2010).

In this case, there is no dispute that the Licensing Agreement between the parties is a valid contract and that it contains an enforceable arbitration clause. DynaVox does not dispute that it assumed all the obligations of ERICA, its predecessor, including the Licensing Agreement. Moreover, UVAPF invoked the arbitration clause when it originally initiated arbitration proceedings against DynaVox. Overall, neither party has alleged that the arbitration clause is unenforceable or that the Licensing Agreement is invalid. Therefore, the court finds that there is a valid, enforceable arbitration agreement between UVAPF and DynaVox.

4

## II. Scope of the Arbitration Agreement

Having determined that the parties' written arbitration agreement is valid and enforceable, the court must now determine whether the agreement covers the issue in dispute, which is the crux of the parties' disagreement. In general, parties may agree to arbitrate only some issues. See Noohi v. Toll Bros., Inc., 708 F.3d 599, 606 (4th Cir. 2013) ("[T]he Supreme Court has held that parties may agree to limit the issues subject to arbitration."). However, the FAA creates a strong presumption in favor of enforcing arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25; see also Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) ("[W]e may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks omitted)); see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir.1989) ("[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration."). If there is an exception to an arbitration clause, then the policy favoring broad construction of arbitration clauses compels narrow construction of exceptions to arbitration clauses. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 711 (4th Cir. 2001) (citing Armijo v. Prudential Ins. Co., 72 F.3d 793, 800 (10th Cir. 1995)).

In the instant case, the Licensing Agreement provides that "all other claims, disputes or controversies arising under, out of, or in connection with [the Licensing Agreement]" shall be resolved by final and binding arbitration. Compl. Ex. 1, at 14. This language brings in the broadest possible range of claims within the scope of the arbitration clause. Am. Recovery Corp.

5

v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93-94 (4th Cir. 1996) (noting that an arbitration clause that provides for arbitration of any disputes arising out of an agreement is very broad, requiring the parties to submit to arbitration if the plaintiff's claims either arise from the agreement or bear a "significant relationship" to the agreement). However, there is an exception to the arbitration clause in the Licensing Agreement for "[c]laims, disputes, or controversies concerning the validity, construction, or scope of any of the Licensed Patents[.]" Compl. Ex. 1, at 14. UVAPF argues that the dispute at issue, whether DynaVox is in breach of contract for failing to pay royalties, is a question about the scope of the '563 Patent, and therefore falls within the exception to the arbitration clause. The court rejects this interpretation.

The terms "validity," "construction," and "scope" are terms of art in patent law, and their inclusion supports a narrow reading of the exception to the arbitration clause so as to cover only patent law-related disputes. Here, DynaVox does not dispute the validity of the '563 patent, in such manner as to challenge its obligation to pay royalties. See Lear, Inc. v. Adkins, 395 U.S. 653, 674 (1969) (holding that the licensee is "permitted to avoid the payment of all royalties" if it can prove patent invalidity). Moreover, DynaVox does not explicitly dispute the scope of the '563 Patent. Theoretically, the parties could stipulate to the scope of the patent and still maintain a dispute about whether DynaVox owes UVAPF royalties. In other words, DynaVox's argument that it does not owe royalties to UVAPF does not necessarily turn on resolution of a dispute as to the scope of the '563 Patent. Instead, DynaVox argues that it does not owe royalties to UVAPF because it did not integrate UVAPF's patented technology into its products. As such, UVAPF has not met its burden of showing a "material factual dispute" regarding the scope of the '563 Patent, which is required for the dispute to fall within the scope of the exception to the arbitration clause.

Moreover, if the court were to agree with UVAPF's interpretation of the nature of the dispute between the parties, then the exception to the arbitration clause would cover more than what is listed in the Licensing Agreement. The exception would go beyond the validity, construction, and scope of the patent, and would also cover infringement disputes as well. This would occur despite the lack of the term "infringement" in the exception to the arbitration clause. See Innovative Eng'g Solutions, Inc. v. Misonix, Inc., 458 F. Supp. 2d 1190, 1196 (D. Or. 2006) ("[I]f [the patent holder] considered patent infringement claims too complex for arbitration, it should have insisted on a patent infringement exception to the Agreement's arbitration clause."). This interpretation goes against the breadth of case law that requires a narrow reading of an exception to an arbitration clause.

In addition, even if the court were to entertain UVAPF's argument that its breach of contract claim can be read to encompass a dispute about the scope of the '563 Patent, this court would be limited to deciding only the question of the scope of the patent. The court would not have jurisdiction to determine the ultimate breach of contract claim. However, in its complaint, UVAPF alleges only one claim against DynaVox: breach of contract for non-payment of royalties. UVAPF does not seek a determination from the court, in the form of a declaratory judgment, regarding the validity, construction, or scope of the '563 Patent. Therefore, the court finds that the issue that it has been asked to resolve is simply a breach of contract claim for non-payment of royalties.

Overall, the court cannot say with positive assurance that the arbitration clause cannot be interpreted to cover the parties' breach of contract dispute. Given the policies in favor of the broad interpretation and enforceability of arbitration clauses and narrow interpretation of arbitration clause exceptions, the court finds that the scope of the parties' broad arbitration

7

Case 3:15-cv-00015-GEC   Document 31   Filed 10/01/15   Page 7 of 8   Pageid#: 358

agreement covers the substance of UVAPF's claim against DynaVox for breach of contract. Accordingly, the parties are required to arbitrate their dispute.

The Fourth Circuit has acknowledged tension in its decisions with respect to whether courts should stay or dismiss an action when all issues presented therein are subject to arbitration. See Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 376 n.18 (4th Cir. 2012) (noting that "[t]here may be some tension between our decision in Hooters—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and Choice Hotels—sanctioning dismissal 'when all of the issues presented ... are arbitrable.'") (quoting Hooters, Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999); Choice Hotels Int'l, Inc. v. BSR Tropicana Resort. Inc., 252 F.3d 707, 709-10 (4th Cir. 2001)); Noohi, 708 F.3d 599, 605 n.2 (4th Cir. 2013). The Fourth Circuit has also noted that "[o]ur sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration." Aggarao, 675 F.3d at 376 n.18. Given this uncertainty, the court will stay this action pending arbitration of UVAPF's claim. See Green, 36 F. Supp. 3d at 678 (staying case in favor of arbitration); see also Portis v. Ruan, 7:15-cv-00118, 2015 WL 3938334, at *2 (W.D. Va. June 26, 2015) (same).

## Conclusion

For the foregoing reasons, the court will grant DynaVox's motion to compel arbitration and to stay these proceedings accordingly. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 1st day of October, 2015.

_/s/ Glen Conrad_
Chief United States District Judge

8